UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

PETER ALFRED PEREZ,

        Plaintiff,                 Case No. 1:21-cv-1018

v.                                             Honorable Ray Kent

D. AMSLER et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.) Plaintiff also previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 6.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant

Basye.  Plaintiff's First Amendment retaliation claim against Defendant Amsler remains in the case.

## Discussion

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility.  Plaintiff sues Lieutenant J. Basye and Correctional Officer D. Amsler.

Plaintiff alleges that he and another inmate, named Francis, were "walking through the chow line having a conversation" about the Duane Waters Health Center in Jackson, Michigan; "it did not have anything to do with Ionia."  (ECF No. 1, PageID.3.)  He claims that they "got up to [Defendant] Amsler and [he] heard [them]."  (*Id.*)  Defendant Amsler "got mad" and asked for Plaintiff's ID.  (*Id.*)  Plaintiff asked why, and Defendant Amsler told Plaintiff to just give him his ID.  (*Id.*)  Plaintiff did so and kept moving.  (*Id.*)

The exhibits attached to Plaintiff's complaint provide more context for his allegations.  Those exhibits indicate that on November 5, 2021, Defendant Amsler was scanning IDs in the chow hall when he heard Plaintiff say, "second shift is so much worse than first shift. They are corrupt as f***, for real!"  (ECF No. 1-1, PageID.9.)  Plaintiff "made these comments from approximately 2 feet away directly in front of [Defendant Amsler] intentionally loud enough for [him] to hear."  (*Id.*)  Defendant Amsler noted that Plaintiff "did not have authorization to harass and degrade the staff of second shift or anyone who works at this facility.  His words also caused alarm to [Defendant Amsler] and [Plaintiff] was argumentative about handing over his ID card as well."  (*Id.*)  Defendant Amsler charged Plaintiff with insolence, a Class II misconduct. (*Id.*)

Plaintiff appeared before Defendant Basye for a misconduct hearing on November 14, 2021. (*Id.*, PageID.8.) Plaintiff pled not guilty to the charge and stated that Defendant Amsler was "out to get [Plaintiff] and always writes him tickets." (*Id.*) Plaintiff "stated he was having a conversation with another prisoner and was not speaking with the 'f***ing officer.'" (*Id.*) Defendant Basye found Plaintiff guilty of the charge, stating:

> Insolence is defined as, words, actions, or other behavior which is intended to harass, degrade, or cause alarm in an employee. Prisoner Perez has been heard, the findings are guilty based on the information provided in the body of the misconduct and the creditability of the reporting staff member. During this misconduct hearing prisoner Perez began cussing and swearing at me about this 'f***ing officer' prisoner was warned multiple times to be respectful.

(*Id.*) Defendant Basye sanctioned Plaintiff with five days of toplock. (*Id.*) Plaintiff received a copy of the misconduct hearing report on November 18, 2021. (*Id.*) His subsequent appeal was denied. (*Id.*, PageID.10.)

Plaintiff has included a statement, purportedly from inmate Francis Nutting, stating that he and Plaintiff "did not in [any way] say [anything] about MTU." (*Id.*, PageID.7.) He avers that the officers they were referring to as being corrupt were Duane Waters officers, not officers at MTU. (*Id.*) Plaintiff maintains that Defendant Amsler "really did not know what [Plaintiff and Nutting] were talking about [and] just assumed [they were] talking about [second] shift" at MTU. (ECF No. 1, PageID.3.) Plaintiff also suggests that Defendant Basye "really did not want to hear anything [Plaintiff] had to say" and that [Defendant Basye] finds inmates guilty even if they are not guilty. (*Id.*)

Plaintiff avers that Defendants' actions violated his First Amendment right to freedom of speech. (*Id.*) The Court's liberal construction of Plaintiff's complaint leads the Court to believe that Plaintiff is asserting a First Amendment retaliation claim against Defendant Amsler

3

and a Fourteenth Amendment due process claim against Defendant Basye. Plaintiff requests $5,000.00 to $10,000.00 in damages. (*Id.*, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

4

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation

Liberal construction of Plaintiff's complaint leads the Court to presume that Plaintiff is asserting a First Amendment retaliation claim against Defendant Amsler. Plaintiff appears to suggest that Defendant Amsler, by issuing the Class II misconduct for insolence, retaliated against Plaintiff for complaining about MDOC staff at the Duane Waters Hospital, which is conduct protected by the First Amendment.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) (holding that "the [prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732,

741 (7th Cir. 2006) (concluding that "legitimate complaints [do not] lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Here, Plaintiff avers that he and another inmate were in the chow hall discussing Duane Waters Health Center when Defendant Amsler heard them. (ECF No. 1, PageID.3.) Plaintiff said, "second shift is so much worse than first shift. They are corrupt as f***, for real!" (ECF No. 1-1, PageID.9.) Defendant Amsler presumed that Plaintiff intentionally made this comment loud enough for him to hear and issued a Class II misconduct for insolence because he believed Plaintiff was harassing and degrading the staff at MTU. (*Id.*) Taking Plaintiff's allegations as true, as the Court must for screening purposes, Plaintiff's complaint sufficiently raises an inference that he was making an oral complaint about corruption amongst MDOC staff. Plaintiff, therefore, has alleged sufficient facts to indicate that he was engaged in protected conduct for purposes of his First Amendment claim.[1]

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from

---

[1] The Court recognizes that being disrespectful to staff members is not protected conduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (prisoner's act of calling the hearing officer a "foul and corrupt bitch" was not protected behavior because such behavior fell within the definition of "insolence" under MDOC Policy Directive 03.03.105 Attach. C); *see also Caffey v. Maue*, 679 F. App'x 487 (7th Cir. 2017) (holding that an inmate calling guards unprofessional was a challenge to the guards' authority that was not protected by the First Amendment). Plaintiff's allegations, however, suggest that he was making an oral complaint about corruption rather than being insolent in any way. The hearing officer's factual determination to the contrary at the minor misconduct hearing has no preclusive effect in this litigation. *Maben*, 887 F.3d at 259.

exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). As a result of a Class II misconduct conviction, a prisoner may be subjected to toplock for up to five days, loss of privileges for up to thirty days, extra duty for up to forty hours, and restitution. *See* MDOC Policy Directive 03.03.105, Attach. D (eff. July 1, 2018). Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to receive visitors, to access the general library, and to access the activity room—amounts to adverse action. *See Maben*, 887 F.3d at 266–67 (quoting *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). The *Maben* court noted the contrary holding in *Ingram v. Jewell*, 94 F. App'x. 271, 273 (6th Cir. 2004) (citing *Thaddeus-X*, 175 F.3d at 396–97) (14 days' loss of privileges does not constitute an adverse action), and, because *Maben* was a published opinion, it effectively overruled *Ingram*. Plaintiff's Class II misconduct conviction, therefore, was sufficiently adverse for purposes of the second prong of a retaliation claim.

Finally, the words that Plaintiff characterizes as protected conduct are the very same words that Defendant Amsler reported to be insolent. Therefore, it is beyond dispute that the adverse action—the threat of sanctions for insolence—was motivated by the protected conduct. Plaintiff, therefore, has sufficiently set forth a plausible First Amendment claim against Defendant Amsler.

### B. Fourteenth Amendment Due Process

Plaintiff suggests that Defendant Basye found him guilty and did not "want to hear anything [he] had to say" during the misconduct hearing. (ECF No. 1, PageID.3.) The Court has construed Plaintiff's complaint as asserting a Fourteenth Amendment due process claim against Defendant Basye.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted), *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. at 484. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

8

Under MDOC Policy Directive 03.03.105 ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor misconducts." The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See id.*, ¶ AAAA. Minor misconduct convictions, therefore, do not affect the duration of confinement. Moreover, the Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and, therefore, do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, cannot maintain a due process claim against Defendant Basye arising from his Class II misconduct conviction for insolence.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Basye will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claim against Defendant Amsler remains in the case.

An order consistent with this opinion will be entered.


Dated:   February 25, 2022                          /s/ Ray Kent
                                                    Ray Kent
                                                    United States Magistrate Judge